JAMES H. CROCKER, JR., & another[1] vs. MARTHA'S VINEYARD COMMISSION.

Dukes County. December 5, 1989. - March 20, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Martha's Vineyard Commission. Subdivision Control*, Planning board, Constructive approval of plan.

The ninety-day time period provided in G. L. c. 41, § 81U, within which the planning board of a town on the island of Martha's Vineyard must act on a definitive subdivision plan, is tolled by the board's referral of the plan to the Martha's Vineyard Commission for its consideration pursuant to the provisions of St. 1977, c. 831. [80-82]

General Laws c. 41, § 81U, did not grant constructive approval to a definitive subdivision plan that had been properly submitted by a planning board to the Martha's Vineyard Commission pursuant to the provisions of St. 1977, c. 831, § 13, and that had been subsequently disapproved by the commission. [82-83]

CIVIL ACTION commenced in the Superior Court Department on July 13, 1988.

The case was heard by *Andrew G. Meyer*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert D. Canty (Samuel L. Rodriguez* with him) for the plaintiffs.

*Michael Halley (Eric W. Wodlinger* with him) for the defendant.

ABRAMS, J. At issue is the appropriate construction of the ninety-day time period in G. L. c. 41, § 81U, as applied to St. 1977, c. 831. The plaintiffs commenced this action seeking an order annulling the decision of the Martha's Vineyard

---

[1]Joseph P. Clair, as trustees of Mill Brook Trust.

Commission (commission) disapproving their subdivision plan, and a declaration that their subdivision plan (plan) was constructively approved by the Chilmark planning board (board) for failure of the commission to take final action on the plan within ninety days. See G. L. c. 41, § 81U. In their motion for summary judgment, the plaintiffs asserted that, "[p]ursuant to [G. L. c. 41, § 81U,] the failure of the . . . Board to approve the . . . plan within 90 days resulted in the plan being constructively approved by operation of law. Therefore, the . . . Commission was not empowered to disapprove the plan, since by law it had already been approved." The plaintiffs argued that the commission's decision was "void and of no force and effect because it was made more than 90 days after Mill Brook filed its plan with the Chilmark Planning Board." After hearing, a Superior Court judge declared "that any statutory or regulatory time limits applicable to local board reviews of development permit applications are tolled by virtue of the referral of a development permit application to the Martha's Vineyard Commission pursuant to the provisions of [St. 1977, c. 831] and the Commission's Regulations thereunder,"[2] and entered summary judgment for the commission. The plaintiffs appeal. We transferred the case to this court on our own motion. We affirm.

The facts are not in dispute. On December 21, 1987, the plaintiffs filed with the board a plan for the development of land in Chilmark, on the island of Martha's Vineyard. The board determined that the plan constituted a development of regional impact (DRI),[3] and on January 5, 1988, pursuant to

---

[2]The plaintiffs argue that the Martha's Vineyard Commission Reg. 2.50 (1), which tolled the ninety-day time period for board review of a plan under G. L. c. 41, § 81U, pending the commission's review pursuant to c. 831, was repugnant to § 81U and beyond the authority of the commission to promulgate, and thus invalid. Because our construction of § 81U and St. 1977, c. 831, achieves the same result as the tolling regulation, we do not consider its validity.

[3]The Legislature has defined DRI's as "the types of development which, because of their magnitude or the magnitude of their effect on the surrounding environment, are likely to present development issues significant

St. 1977, c. 831 (c. 831), referred the plan to the commission. On February 4, 1988, within thirty days of receiving the plan, the commission held a public hearing, see St. 1977, c. 831, § 14, which was continued until and closed on April 7, 1988. The record remained open for thirty days to allow the plaintiffs time to respond to comments made at the hearing. The plaintiffs granted the commission a three-week extension to the sixty-day time period within which the commission was required to render its decision. See *id.* at § 14.

On June 23, 1988, more than ninety days after the plan was submitted to the board, the commission issued a decision "disapprov[ing] the Development Application and den[ying] permission to the Planning Board in Chilmark for the granting of necessary development permits." The board subsequently voted to reject the plan on August 8, 1988.

The purpose of St. 1977, c. 831, was "to import regional — island-wide and Statewide — considerations into the protection of the land and water of Martha's Vineyard, considerations which, the Legislature could believe, the towns themselves had not and would not severally bring to bear."[4] *Island Properties, Inc.* v. *Martha's Vineyard Comm'n*, 372 Mass. 216, 229 (1977). The commission was created to "preserv[e] and conserv[e] . . . the unique natural, historical, ecological, scientific, and cultural values of Martha's Vineyard . . . , by protecting these values from development and uses which would impair them, and by promoting the enhancement of sound local economies." St. 1977, c. 831, § 1. See *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.* v. *Martha's Vineyard Comm'n*, 380 Mass. 785, 802 (1980). Designation of DRI's and the regulation of develop-

---

to more than one municipality of the island of Martha's Vineyard." St. 1977, c. 831, § 12.

[4] Originally enacted in 1974, see St. 1974, c. 637, the act was "intended to respond (as the General Court could believe) to the threat of destruction of the ecological and other special values of the island through steeply increasing commercial developments of its land and water resources which would not be adequately contained or regulated merely by action that could or would be initiated by the individual towns." *Island Properties, Inc., supra* at 219.

ment in these projects is one of the "principal substantive areas of authority of the Commission." *Id.* at 790. General Laws c. 41, § 81U, was intended "to set up an orderly procedure for definitive action within stated times," thereby preventing undue delay in the review of development plans by local authorities. *Selectmen of Pembroke v. R. & P. Realty Corp.*, 348 Mass. 120, 125 (1964). General Laws c. 41, § 81U, provides that the failure of a planning board to take final action on a definitive subdivision plan within ninety days after its submission to the board "shall be deemed to be an approval thereof."

When a planning board on Martha's Vineyard receives a definitive subdivision plan, it must determine, according to standards and criteria established by the commission, see St. 1977, c. 831, § 12, whether the proposed subdivision is a DRI and, if so, it must refer the application to the commission for approval. *Id.* at § 13. After notice and hearing, "[t]he commission shall permit the referring agency to grant a development permit for such development only if [it makes certain findings]." *Id.* at § 14. "No referring agency [here, the Chilmark planning board] shall grant a development permit for a development of regional impact except with the permission of the commission." *Id.* at § 16.[5]

The plaintiffs argue that there is no inconsistency between the statutes if the time periods in each are read to run concurrently, rather than sequentially as the commission suggests.[6] The plaintiffs assert that the board had ninety days to

---

[5] "In permitting the referring agency to grant a development permit for a [DRI] the commission may also specify conditions to be met by the developer to whom the permit is being issued for the purpose of minimizing economic, social, or environmental damage." St. 1977, c. 831, § 16.

[6] The plaintiffs do not challenge the merits of the commission's decision. The parties briefed the question whether the doctrine of implied repeal gives effect to c. 831, the subsequent and more specific statute, if the statutes are inconsistent. See *Boston Teachers Union, Local 66 v. Boston*, 382 Mass. 553, 564 (1981); *Pereira v. New England LNG Co.*, 364 Mass. 109, 118 (1973). We do not reach this question because § 81U is not "so repugnant to and inconsistent with [c. 831] that both cannot stand." *Gregoire, petitioner*, 355 Mass. 399, 400 (1969), quoting *Doherty v. Commissioner of Admin.*, 349 Mass. 687, 690 (1965). The plan would not, however, be

make its decision, see G. L. c. 41, § 81U, and that nothing in c. 831, including its requirement that a board refer all DRI plans to the commission, alters the applicability of the time periods set forth in § 81U. The plaintiffs contend that any inconsistency in the statutes should be avoided by reading the time periods in each to run concurrently.[7] The plaintiffs conclude that the commission is subject to the same ninety-day review period, which starts on the day a plan is filed with a planning board, that applies to planning boards. See G. L. c. 41, § 81U. We do not agree.

We believe that the statutes may be harmonized to avoid any inconsistency, by tolling the time for board review in § 81U, pending commission review of DRI applications pursuant to c. 831. See *Independence Park, Inc.* v. *Board of Health of Barnstable*, 403 Mass. 477, 480 (1988), citing *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981); *Boston* v. *Board of Educ.*, 392 Mass. 788, 792 (1984). A practical consequence of this construction is that commission approval is required before a plan can be constructively approved by operation of G. L. c. 41, § 81U.

---

constructively approved even if an irreconciliable inconsistency existed. "If a general statute and a specific statute cannot be reconciled, the general statute must yield to the specific statute. This is particularly true where, as here, the specific statute was enacted after the general statute." *Pereira, supra* at 118. The parties also briefed the question whether a holding that the time limits and constructive approval provisions of G. L. c. 41, § 81U, apply to the commission's review of DRI subdivision plans should be applied retroactively to the plaintiffs' plan. We do not reach this issue because we conclude that G. L. c. 41, § 81U, does not apply to the commission.

[7]The plaintiffs note that local boards of health review plans concurrently with local planning boards and contend that the commission must operate in the same manner as a local health board. See G. L. c. 41, § 81U. We disagree. Section 81U expressly provides that a board of health shall review plans concurrently with a planning board and that a board of health's failure to act within forty-five days will result in constructive approval. Rather than aiding the plaintiffs, this suggests that, had the Legislature intended § 81U to apply to the commission, it would have amended § 81U accordingly or included a provision to that effect in c. 831.

The commission's review period commenced on the day it received the plan from the board, not on the day it was filed with the board. See St. 1977, c. 831, § 14. Further, nothing in c. 831 required the commission to conduct its review in less than ninety days. Chapter 831 requires only that the commission hold a hearing on the plan within thirty days of its receipt from the board and render a decision within sixty days after the hearing. *Id.* Nothing in c. 831 limited the hearing to a single day.

The commission received the plan from the board on January 5, 1988, commenced the hearing on February 4, 1988, and continued it until April 7, 1988, in part "to give the [plaintiffs] time to submit [the rest of the plan and] to respond to the entire plan." The record does not show that the plaintiffs objected at the agency level to a hearing stretched over sixty-three days, nor do they claim error on that ground on appeal.

Tolling the time in § 81U reasonably effects the purposes of both statutes. The commission's preeminent role in reviewing DRI's is respected without giving local boards an opportunity to delay excessively in making local decisions. Local authorities still are prevented from unduly delaying decisions because the time period within which a board must act pursuant to G. L. c. 41, § 81U, is not eliminated, but merely suspended until the commission acts and remands an application to the board. Further, the commission is subject to its own time restrictions. See St. 1977, c. 831, § 14.

The plaintiffs also argue that G. L. c. 41, § 81U, permits constructive approval of their plan despite the express rejection of the plan, in full compliance with St. 1977, c. 831, by *both* the commission and the board. Although G. L. c. 41, § 81U, permits constructive approval of definitive subdivision plans, St. 1977, c. 831, is silent on the same question. Indeed, St. 1977, c. 831, addresses itself solely to express approval by a board and specifically conditions board approval on prior commission approval. See St. 1977, c. 831, § 16.

Here, the board referred the plan to the commission and waited for the commission's decision before acting. See St.

1977, c. 831, §§ 13, 14, 16. It would be a perverse anomaly to conclude that a town's lawful compliance with c. 831 could frustrate that act's very purpose. Further, given the Legislature's conclusion that c. 831 and the commission were needed because "towns themselves had not and would not" bring "regional — island-wide and Statewide — considerations into the protection of the land and water of Martha's Vineyard," *Island Properties, Inc.*, *supra* at 229, we conclude that the Legislature did not intend to enact a scheme whereby a local board could thwart the commission's rejection of a plan by simply failing to act within ninety days. We are loath to impute to the Legislature a reading that "produces a result that is contrary to common sense and sound reason." *Blue Cross of Massachusetts, Inc.* v. *Commissioner of Insurance*, 397 Mass. 674, 677 (1986), citing *vanDresser* v. *Firlings*, 305 Mass. 51, 53-54 (1940). Under St. 1977, c. 831, the commission's review of all DRI's is central to the comprehensive regional scheme. Any construction of § 81U that does not toll its time period in some circumstances could render the commission's review a nullity. "An intention to enact a barren and ineffective provision is not lightly to be imputed to the Legislature." *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 189 (1969), and cases cited.

*Judgment affirmed.*