ROSEMARIE DiNATALE *vs.* CONTRIBUTORY RETIREMENT
APPEAL BOARD & another.[1]

No. 94-P-263.

Middlesex. June 5, 1995. - November 7, 1995.

Present: WARNER, C.J., SMITH, & FLANNERY, JJ.

*Retirement. Public Employment,* Retirement, Workers' compensation.
*Workers' Compensation Act,* Lump-sum settlement.

In an appeal under G. L. c. 30A from a determination of the Contributory
Retirement Appeal Board, the judge correctly ruled that G. L. c. 32,
§ 3 (6), governing an employee's reinstatement to active service follow-
ing a leave of absence and requalification for retirement benefits, was
inapplicable where the employee was entitled to retain membership in
the retirement system pursuant to G. L. c. 32, § 14 (1), on account of
her receipt of a lump sum workers' compensation settlement after she
left her employment. [405-406]

An employee's premature withdrawal of her total accumulated retirement
deductions in violation of the prohibition of G. L. c. 32, § 14 (1) (*a*),
did not result in her loss of membership in the retirement system, in
circumstances in which the employee was entitled to retain her mem-
bership rights at the time she requested the return of her funds on
account of her entitlement to workers' compensation benefits and where
her withdrawal of the funds was an honest error. [406-409]

A retirement board was bound by the terms of a settlement awarding a
municipal employee workers' compensation benefits and thus was re-
quired to allocate the settlement according to the terms of G. L. c. 32,
§ 14 (*c*), to credit the employee with the additional creditable service to
which she was entitled. [409]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 1, 1992.

The case was heard by *Barbara A. Dortch-Okara,* J.

*Deborah R. Cautela* for Cambridge retirement board.

*Thomas F. Gibson* for the plaintiff.

---

[1] Cambridge retirement board.

*Rosemary S. Gale*, Assistant Attorney General, for Contributory Retirement Appeal Board, was present but did not argue.

WARNER, C.J. The defendants, the Cambridge retirement board (CRB) and the Contributory Retirement Appeal Board (CRAB), appeal from a judgment of the Superior Court reversing CRAB's decision and allowing the plaintiff, Rosemarie DiNatale, to redeposit her refunded accumulated total deductions and recover her rights as a member of the city's retirement system, in particular, superannuation retirement benefits. We affirm.

The undisputed facts are as follows. DiNatale commenced employment as a traffic supervisor for the police department of the city of Cambridge (city) in 1979. On February 1, 1983, DiNatale, while on duty, was struck by a motor vehicle, sustaining injuries to her back, neck, an arm, and a leg. She received workers' compensation benefits for nine months and returned to work in November, 1983. In November, 1987, DiNatale requested and received a position as a clerical aide in the police department. She requested this indoor position because the weather bothered her back and arm. In 1988, DiNatale requested a reduction in hours so that she could babysit her grandchild and because her injured arm and leg were bothering her. The request was denied. DiNatale resigned from the police department on November 9, 1988. On that date, DiNatale was fifty-two years old and had nine years and one month of creditable service. After ten years of service, she would have been eligible for a superannuation retirement allowance.

On November 10, 1988, DiNatale submitted a form to CRB, requesting a return of the accumulated total deductions that she had made to the city's retirement system. In completing the form, she did not seek the advice of an attorney or anyone else, and she did not ask for or receive an explanation of the form. At that time, DiNatale was not receiving workers' compensation, and she had not submitted any new application for such benefits to the Department of

Industrial Accidents (DIA). DiNatale received her refund from CRB on December 29, 1988.

On July 25, 1990, the DIA approved an agreement concerning the city's liability for compensation resulting from DiNatale's February 1, 1983, accident which provided DiNatale with a lump sum payment pursuant to G. L. c. 152, § 48. Under the agreement, the amount of the settlement, when reduced to weekly payments, was intended to give to DiNatale the amount of "additional creditable service necessary to qualify for superannuation retirement and health insurance benefits." CRB was not a party to the agreement.

After receiving the settlement, DiNatale attempted to pay back her accumulated total deductions to the city's retirement system so that she could then file an application for superannuation or disability retirement. On March 29, 1990, CRB issued a decision denying DiNatale's attempt to pay back her deductions for the purpose of immediately qualifying for retirement benefits. On October 15, 1990, the city solicitor sent a letter to CRB with a copy of the lump sum payment agreement between the DIA and DiNatale stating that, pursuant to the agreement, DiNatale would be eligible for superannuation retirement if she paid back her deductions. CRB then sought an advisory opinion from the Public Employee's Retirement Administration (PERA) on whether the settlement agreement entitled DiNatale to additional creditable service thereby qualifying her for superannuation retirement. See G. L. c. 32, § 21(4); *Plymouth County Retirement Assn.* v. *Commissioner of Pub. Employee Retirement*, 410 Mass. 307, 310-312 (1991). PERA's response was that CRB properly refunded DiNatale's accumulated total deductions, thus terminating her membership in the retirement system and that, because CRB was not a party to the lump sum agreement, CRB was not bound by its terms. PERA confirmed that CRB acted properly in denying DiNatale's request to redeposit her refund.

DiNatale appealed CRB's decision to CRAB. G. L. c. 32, § 16(4). CRAB assigned the appeal to the Division of Ad-

ministrative Law Appeals (DALA) and after a hearing, the administrative magistrate issued a decision reversing CRB's decision and allowing DiNatale to pay back her accumulated total deductions. CRB objected and requested that CRAB review the magistrate's decision.

CRAB adopted the magistrate's findings of fact but rejected her conclusion and recommendation. CRAB ruled that upon terminating her employment with the city and requesting a return of her accumulated total deductions, DiNatale terminated her membership in the city's retirement system and could only reenter the system by completing two years of active employment as required by G. L. c. 32, § 3(6) (*e*). DiNatale appealed CRAB's decision to the Superior Court. G. L. c. 30A, § 14(1).

The Superior Court reversed CRAB's decision. The court, relying on *Boston Retirement Bd.* v. *McCormick*, 345 Mass. 692 (1963), held that under G. L. c. 32, § 14, DiNatale had retained her membership in the retirement system, despite her withdrawal of her accumulated total deductions, and allowed her to redeposit her deductions and apply for superannuation retirement benefits.

The defendants raise the following arguments on appeal: (1) the Superior Court judge improperly applied G. L. c. 32, § 14, which concerns retention of membership in the retirement system while receiving workers' compensation, rather than G. L. c. 32, § 3(6), which concerns reinstatement in the retirement system after membership has terminated; and (2) the workers' compensation agreement between DiNatale and the DIA is not binding on CRB.[2]

---

[2]CRB and CRAB also argue that the judge should have deferred to CRAB's expertise in applying the complex retirement provisions for public employees set forth in G. L. c. 32. Although we agree that a reviewing court should consider an agency's "experience in the area and its function in applying the controlling statute," *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 479, 487 (1985), we must ensure that the agency "adhered to statutory requirements" and acted rationally. *Attorney Gen.* v. *Department of Pub. Util.*, 390 Mass. 208, 228 (1983). See *Boston Police Superior Officers Fedn.* v. *Labor Relations Commn.*, 410 Mass. 890, 892 (1991) (no judicial deference to agency's disposition of matter where agency commits error of law). Judicial deference to an

1. *Retention of membership in the retirement system.* The Superior Court judge reversed CRAB's decision on the ground that it was based on an erroneous interpretation of the law. G. L. c. 30A, § 14(7) (*c*). The judge correctly ruled that G. L. c. 32, § 3(6),³ governing an employee's reinstatement to active service following a leave of absence and requalification for retirement benefits, was inapplicable in this case because DiNatale was entitled to retain membership in the retirement system pursuant to G. L. c. 32, § 14(1),⁴ and

---

agency's action "is not a principle of abdication." *Board of Educ.* v. *School Comm. of Amesbury,* 16 Mass. App. Ct. 508, 514 (1983).

³General Laws c. 32, § 3(6)(*e*), as amended through St. 1958, c. 359, provides in pertinent part:

> "Leave of Absence and Reinstatement to or Re-entry into Active Service . . . ."

"(*e*) . . . no member who is reinstated to or who re-enters active service . . . shall be eligible to receive a superannuation retirement allowance . . . unless and until he shall have been in active service for at least two consecutive years . . . subsequent to the date of commencement of his new employment. . . ."

⁴Section 14, as amended through St. 1991, c. 398, §§ 9 & 10, concerns the effects of an employee's receipt of workers' compensation benefits and provides as follows:

"(1) Retention of Rights of a Member in Service."

" (*a*) Any employee who was a member in service at the time of sustaining an injury . . . on account of which he becomes entitled to payments under the provisions of chapter one hundred and fifty-two shall, . . . during any period determined, as set forth, in paragraph (c); represented by the allocation of the amount of any lump sum settlement payable directly to him under the provisions of section forty-eight of such chapter in lieu of such weekly payments and also, in either event, during a further period of thirty days, retain all the rights of a member in service while he is living, unless and until a retirement allowance becomes effective for him under the provisions of sections one to twenty-eight, inclusive. During such periods, however, no deductions for the annuity savings fund of the system shall be made from payments such members shall receive under the provisions of chapter one hundred and fifty-two nor shall he withdraw his accumulated total deductions therefrom."

"Any such member shall have credited to him as creditable service under the system the period during which he is receiving such weekly payments or lump sum settlement in lieu of such weekly payments . . . ."

. . .

"(*c*) Whenever such member receives an amount of lump sum settlement payable directly to him under the provisions of section forty-eight of chapter one hundred and fifty-two in lieu of weekly payments, the period

*Boston Retirement Bd.* v. *McCormick*, 345 Mass. 692 (1963).

Pursuant to G. L. c. 32, § 14(1), an employee receiving a lump sum settlement for a workers' compensation claim retains membership in the retirement system and continues to accrue creditable service for the period of time over which the lump sum settlement is allocated. During this period, the employee should not withdraw his or her accumulated total deductions. G. L. c. 32, § 14(1) (*a*). See note 4, *supra.* The question presented by this appeal is whether DiNatale's premature withdrawal of her total accumulated deductions in violation of the prohibition of § 14(1) (*a*) resulted in her loss of membership in the retirement system. This precise issue has been reached before.

In *Boston Retirement Bd.* v. *McCormick, supra,* a nurse in the Boston hospital department received a compensable injury in the course of her employment. After taking a leave of absence for illness from 1955 to 1958, she failed to return to work, and was terminated. McCormick requested and received repayment of her accumulated retirement deductions in 1958. *Id.* at 693. In 1960, she received a lump sum workers' compensation payment from the city of Boston for her 1955 injury. *Id.* at 696. Her attempt to redeposit her retirement funds with interest was denied by the retirement board. *Id.* at 694.

The court held that McCormick was entitled to retain her membership rights in the retirement system for two reasons. The first, not applicable to this case, was that McCormick had been entitled to accidental disability retirement benefits at the time her employment was terminated. *Id.* at 695-696.[5]

---

represented thereby shall, for the purpose of this section, be computed to begin on the date for which he last received regular compensation prior to such settlement . . . and to continue during a number of weeks equal to the quotient of the amount of such lump sum settlement divided by the amount of the maximum weekly compensation which would otherwise be payable to him under the provisions of such sections."

[5]DiNatale has said that she may apply for accidental disability retirement. G. L. c. 32, § 7. The record, however, indicates that such a claim would be without merit.

The second reason, pertinent to this case, was that at the time McCormick requested the return of her accumulated total deductions, she was entitled to workers' compensation payments which she later received in a lump sum payment. *Id.* at 696. The lump sum payment was allocated over a period of time pursuant to G. L. c. 32, § 14(1) (*c*). "During that period [McCormick] retained by virtue of § 14(1) (*a*), first paragraph, 'all the rights of a member in service' until a retirement allowance should become effective for her." *Ibid.*

The *McCormick* court further held that c. 32 impliedly prohibits payment of accumulated total deductions to members of retirement systems except under express statutory authorization, and that the board had no such authority. *Id.* at 696-697. But the refund "was excusable error, if, as the record strongly indicates, the board had no cause to know of Mrs. McCormick's potential claim and reasonably thought it was refunding the accumulated deductions to an employee who was resigning and who had no claim to a retirement allowance." *Id.* at 698. The court saw "nothing in the statute which prevents a member from receiving those benefits because of an honest error which can readily and fairly be corrected." *Ibid.* See also *Bianchi* v. *Retirement Bd. of Somerville,* 359 Mass. 642, 650 (1971). The court held that McCormick was entitled to redeposit her accumulated total deductions in order to file for retirement benefits. *McCormick, supra* at 699.

DiNatale, like McCormick, was potentially entitled to workers' compensation benefits when she filed for the return of her accumulated retirement deductions. Her subsequent lump sum payment entitled her, under G. L. c. 32, § 14(1) (*a*), to retain her membership in the retirement system retroactively for the period over which the lump sum was allocated. The amount of the lump sum settlement was calculated so that, when reduced to weekly payments pursuant to G. L. 32, § 14(1) (*c*), it would extend over the period necessary to qualify her for superannuation retirement. Thus, as a result of the retroactive application of her workers' compensation benefits, DiNatale was potentially entitled to a re-

tirement allowance when she filed for the return of her accumulated total deductions. Under these circumstances the CRB could not, as it contends, properly refund DiNatale's pension funds pursuant to G. L. c. 32, § 10(4).[6]

The final sentence of § 14(1) (*a*), first paragraph, appears to put the burden on the workers' compensation recipient not to withdraw his or her funds. It provides: "During such periods [of entitlement to worker's compensation payments] . . . no deductions . . . shall be made from payments such members shall receive under the provisions of chapter one hundred and fifty-two *nor shall he withdraw his accumulated total deductions therefrom*" (emphasis supplied). A similar provision, however, was present in § 14 (1) (*a*) at the time McCormick applied for her refund. See St. 1945, c. 658, § 1; *McCormick, supra* at 696 n.3.[7] Moreover, *McCormick* recognizes that errors are bound to occur because of the retirement system's complexity, and implies that a good faith error on the part of either a member or the board should be remedied absent a statutory provision prohibiting it. *McCormick, supra* at 698-699 & nn.5 & 6. Section 14(1) (*a*) contains no punitive sanction to be applied to a member who mistakenly withdraws her funds while entitled to workers' compensation benefits, and such a mistake should not result in her forfeiting all the protections afforded by the remainder of the section. This is so especially where "an honest error . . . can readily and fairly be corrected" by allowing the member to

---

[6]Section 10(4), as amended through St. 1984, c. 373, § 1, provides in pertinent part: "Any member not entitled to a retirement allowance in accordance with the provisions of sections one to twenty-eight inclusive . . . shall be paid the amount of his accumulated total deductions as provided for in subdivision (1) of section eleven."

[7]*McCormick, supra* at 696 n.3, seems to imply that the admonition against withdrawing retirement funds — "nor shall he withdraw his accumulated total deductions" — appearing in the last sentence of § 14(1)(*a*), first paragraph, was inserted by an amendment that became effective *after* McCormick had withdrawn her funds in 1958. However, the admonition had already appeared in the 1945 statute establishing a single contributory retirement law for public employees, see St. 1945, c. 658, § 1, and is repeated verbatim in the amendment to which *McCormick* adverts. See St. 1958, c. 404, § 1.

redeposit the funds mistakenly withdrawn, with interest. *Mc-Cormick, supra* at 698. As in *McCormick*, DiNatale may refund her accumulated total deductions with interest in order to file for retirement benefits.

2. *Lump sum settlement agreement.* The Superior Court judge correctly held that CRB is not bound by the "opinion" contained in the settlement statement to which it was not a party,[8] but that CRB is nevertheless "bound by the terms of the settlement awarding DiNatale worker's compensation benefits allocable to a specified period of time" as defined by G. L. c. 32, § 14(*c*). Section 14 requires CRB to allocate a lump sum settlement over a statutorily defined period of time and to provide any retirement benefits which accrue as a result of additional creditable service. See note 4, *supra*. See also *Gannon* v. *Contributory Retirement Appeal Bd.*, 338 Mass. 628, 634 (1959); *Boston Retirement Bd.* v. *McCormick, supra* at 696.

*Judgment affirmed.*

---

[8]The settlement statement specifically provided that the settlement was intended to "render the employee the amount of additional creditable service necessary to qualify for superannuation retirement and health insurance benefits."