The plaintiff, Robert Rothstein, appeals from a Superior Court judgment affirming a decision of the defendant Contributory Retirement Appeal Board (CRAB), which denied Rothstein's request to revoke his election to discontinue contributions to the State retirement system after he turned seventy years old. Rothstein's principal claim on appeal is that CRAB erred because the defendant State Board of Retirement (board) failed to provide 180 days' notice of his right to elect as required by statute. Concluding that Rothstein has failed to show prejudice resulting from the notice he received, we affirm.
Background. 1. The election statute. Pursuant to G. L. c. 32, § 90G ¾, inserted by St. 1990, c. 254, § 3, members of the State retirement system (system) working past age seventy had two options: (1) to discontinue contributions to the system at age seventy, or (2) to continue contributions through payroll deductions.[3] If a member elected to continue contributions, the additional time served and any increase in regular compensation would be considered in the calculation of the member's retirement benefit. If a member elected to discontinue contributions, his retirement benefit would be calculated using only his service and compensation prior to age seventy.
The statute required the board to notify members of this election requirement between their sixty-ninth birthday and 180 days before their seventieth birthday. The member could make the election at any time between their sixty-ninth birthday and sixty days before their seventieth birthday. The statute further provided that the election, once made, "may not be revoked." Ibid.
2. Rothstein's election and appeal. The relevant facts are not in dispute. Rothstein's seventieth birthday was March 5, 2010. About ninety days before that date, by letter of December 3, 2009, the board informed Rothstein, a University of Massachusetts professor who planned to work beyond age seventy, that he had the right to elect whether to continue his contributions to the system once he turned seventy. The letter was accompanied by a form, which Rothstein was to complete by indicating his choice and return to the board "no later than [thirty] [sic ][4 ] days prior to [his seventieth] birthday."
Based on his years of service, Rothstein was already eligible for the maximum lifetime annual retirement benefit, eighty percent of his highest average annual compensation. He testified that "at the time it didn't seem likely that there would be salary increases[,] at least in the near future." Therefore, even if he continued to pay into the system, an increase in his ultimate retirement benefit was unlikely. After consulting with his wife and, according to his wife's testimony, a financial advisor, Rothstein decided to terminate his contributions. On February 3, 2010, he sent the board a fully executed form reflecting his decision to discontinue his retirement contributions when he reached age seventy.
Seventeen months later, on July 20, 2011, Rothstein sent a letter to the board requesting that he "be allowed to resume making retirement contributions, including the contributions for the period since March[,] 2010." In the letter, he acknowledged that "[t]he form stated, and [he] fully understood, 'that [his] decision cannot be revoked.' " When the board denied his request, Rothstein appealed to CRAB, asking that the board's decision be reversed for two reasons: first, the board's notice to Rothstein regarding his right to elect was provided later than required by the statute; and second, he had been misled by published materials propagated by the Public Employee Retirement Administration Commission regarding the approximate differences in retirement benefits under different pension options. An administrative magistrate of the Division of Administrative Law Appeals (DALA) concluded that, although the board's notice to Rothstein was not consistent with the statute, his election was irrevocable under G. L. c. 32, § 90G ¾. The magistrate also rejected Rothstein's contention that he had been misled, reasoning that the publications were not incorrect and the board had provided opportunities for clarification.[5]
Rothstein objected to the magistrate's decision, but CRAB adopted the magistrate's findings and affirmed the DALA decision. Rothstein sought judicial review in Superior Court pursuant to G. L. c. 30A, § 14. Upon cross motions for judgment on the pleadings, the Superior Court judge ordered judgment for the defendants. This appeal followed.
Discussion. The language of the election statute at issue here is unambiguous. It plainly states that "[a]n election under this section may not be revoked." G. L. c. 32, § 90G ¾. Rothstein acknowledged that he understood the finality of his election when he executed the election form confirming that "I understand my decision cannot be revoked." Despite this assertion, he claims that he should have been permitted to change his election seventeen months later because he was not given the minimum 180 days' notice prescribed by statute. We are not persuaded.
"Judicial review of a CRAB decision under G. L. c. 30A, § 14, is narrow. We are not called upon to determine whether the CRAB decision is based on the 'weight of the evidence,' nor may we substitute our judgment for that of CRAB.... A court may not set aside a CRAB decision unless the decision is legally erroneous or not supported by substantial evidence." RetirementBd. of Salem v. Contributory Retirement Appeal Bd., 453 Mass. 286, 288-289 (2009), quoting from Damiano v. Contributory Retirement Appeal Bd., 72 Mass. App. Ct. 259, 261 (2008). Even where CRAB has erred, we will not set aside its decision unless the error has prejudiced the plaintiff's substantial rights. See G. L. c. 30A, § 14(7).
Here, the DALA magistrate made (and CRAB adopted) the finding that the board gave Rothstein ninety-two days' notice of his right to elect before his seventieth birthday, rather than the 180 days provided by statute. Although the statute requires 180 days' notice, it specifies no remedy if such notice has not been given. CRAB interpreted the statute to mean that members receiving deficient notice were entitled to more time (equal to the statutory period) to make their election. CRAB concluded, however, that once such members made their election, it was irrevocable. We think this interpretation of the plain language of G. L. c. 32, § 90G ¾, was reasonable. "Where an agency's interpretation of a statute is reasonable, [we] should not supplant it with [our] own judgment." Boston Retirement Bd. v. Contributory Retirement Appeal Bd., 441 Mass. 78, 82 (2004). For this reason, we discern no error in CRAB's decision.
Rothstein contends that CRAB's decision should be set aside because it acted arbitrarily or capriciously in selectively enforcing the provisions of G. L. c. 32, § 90G ¾. According to Rothstein, CRAB cannot permit the board to provide less timely notice than that required by the statute, and yet strictly enforce the irrevocability of his election.[6] The argument is unavailing. "A decision is not arbitrary and capricious unless there is no ground which 'reasonable [people] might deem proper' to support it" (emphasis supplied). T.D.J. Dev. Corp. v. Conservation Commn. of N. Andover, 36 Mass. App. Ct. 124, 128 (1994), quoting from Cotter v. Chelsea, 329 Mass. 314, 319 (1952). As discussed above, the unambiguous language of the statute supported CRAB's decision. Bearing in mind the deference owed in this context, we discern nothing arbitrary or capricious in CRAB's application of the statute in these circumstances.[7]
We disagree, however, with the board's argument that once a member makes an election under G. L. c. 32, § 90G ¾, the election is irrevocable, and no remedy is available, under any circumstances. This statutory interpretation is inconsistent with the general principle that the Superior Court has the equitable power to correct an administrative process that is fundamentally unfair. See Milligan v. Board of Registration in Pharmacy, 348 Mass. 491, 500 (1965) ("[T]he broad, remedial purpose of [G. L. c. 30A is] to provide comprehensively for procedural due process in administrative proceedings"). Accordingly, bearing in mind that we "grant special deference to the agency's interpretation of the statutory scheme it is charged with administering," Buchanan v. Contributory Retirement Appeal Bd., 65 Mass. App. Ct. 244, 246 (2005), we reject the board's contention that because the election was irrevocable under the statute, no remedy was available, even to address an inequity in the administrative process. However, for the reasons that follow, Rothstein has failed to demonstrate any inequity here.
Rothstein should have received notice of his right to elect at least 180 days before turning seventy. He did not. Nothing in the record, however, suggests that he suffered prejudice as a result. Rather, he made a considered decision after consulting with his wife and a financial advisor. Even though the election form recommended that Rothstein contact a retirement counselor to discuss his retirement options, he chose not to because he had no questions. According to Rothstein, "it seemed very straightforward." Consequently, he did not, at any point, request additional time to make his election. Moreover, he has not claimed, much less shown, that he would have chosen differently had he received more time to make his election. Simply put, Rothstein has failed to establish that the notice he received prejudiced his substantial rights. See G. L. c. 30A, § 14(7).
Judgment affirmed.

Section 90G ¾ was repealed effective July 1, 2017. St. 2017, c. 47, §§ 28, 153. The repeal has no impact on this case. See St. 2017, c. 47, § 141 ("A member who made an election under section 90G ¾ ... prior to [July 1, 2017,] shall have the election maintained ...").

See note 5, infra.

This claim-that Rothstein was misled regarding the approximate difference in his retirement benefit under pension options A (monthly payments to the retiree for life) and C (reduced monthly payments to the retiree with a survivor benefit to the retiree's beneficiary for life)-was his principal argument in the proceedings before the board, DALA, and CRAB. Because he has not pursued this argument on appeal, we do not address it.

We assume, for purposes of this decision, that the board's published materials also misinformed members that they could make their election up to thirty days before their seventieth birthday, where the statute provided that they must do so at latest sixty days before their birthday. This error was immaterial in Rothstein's case, as it provided him more time to make his decision.

Our decision should not be interpreted to condone the publication of inaccurate information regarding the notice that members receive and the deadline for their election. CRAB's remedy for this misinformation was to grant members the extra time necessary to ensure that they receive the full statutory period to make this important decision. Under the circumstances, we think this remedy was reasonable. Rothstein's proposed remedy-to make his election, wait seventeen months, reevaluate, and then change his mind, was not.